[No. F010616. Fifth Dist. Dec. 18, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES F. PIFER, Defendant and Appellant.

958

COUNSEL

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (G. A.), J.*—James F. Pifer appeals from a judgment finding him guilty of violating Penal Code section 4573.6 for possession of an inmate-made hypodermic syringe at Tehachapi State Prison. Appellant asserts the trial court erroneously denied his Penal Code section 1538.5 motion to

---

* Retired Presiding Justice of the Court of Appeal sitting under assigment by the Chairperson of the Judicial Council.

suppress an X-ray search conducted on him as he entered Tehachapi State Prison.

Appellant was sentenced to the aggravated term of three years.

## FACTS

On January 9, 1987, appellant, along with other security housing unit prisoners, was transferred by bus from Folsom State Prison to the security housing unit of Tehachapi State Prison. As part of a routine procedure without any particularized suspicion that appellant or any of the other prisoners were in possession of contraband, all of the prisoners on the bus were X-rayed upon their arrival at Tehachapi. The X-ray was performed by a specialized X-ray technician. A foreign object was discovered in appellant's rectal cavity.

Appellant was confronted with the X-ray and was asked to remove the object from his body. Appellant removed the object from his rectum and placed it on a metal container. Prison authorities noted that it was an inmate-manufactured hypodermic syringe secreted in a tubular, brown container. During the preliminary hearing, each side stipulated that appellant was lawfully detained as an inmate in the California State Prison system.

Appellant argues the use of the X-ray violated his Fourth Amendment rights because there was no probable cause or reasonable suspicion he had contraband concealed on his person, and the use of the X-rays constituted a health hazard.

## DISCUSSION

■ Since the passage of Proposition 8, rights under the Fourth Amendment are governed by federal standards, not the California Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

*Bell* v. *Wolfish* (1979) 441 U.S. 520 [60 L.Ed.2d 447, 99 S.Ct. 1861] is the leading federal authority in this area. Among other holdings, the Supreme Court in *Wolfish* upheld the practice in a federal custodial facility of conducting a body cavity search after every contact visit of an inmate with a person from outside the institution. Observing that the Fourth Amendment prohibits only unreasonable searches and the challenged searches under the circumstances were not unreasonable, the court said: "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need

for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place *in which it is conducted. [Citations.]* A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record, App. 71-76, and in other cases." (441 U.S. at p. 559 [60 L.Ed.2d at p. 481].)

■ The court concluded "[t]he searches must be conducted in a reasonable manner. [Citation.] . . . [W]e deal here with the question whether visual body-cavity inspections as contemplated by the MCC rules can *ever* be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can." (441 U.S. at p. 560 [60 L.Ed.2d at p. 482], fn. omitted.)

In *Hudson* v. *Palmer* (1984) 468 U.S. 517 [82 L.Ed.2d 393, 104 S.Ct. 3194], the United States Supreme Court held random shakedown searches of a prisoner's cell without any particularized suspicion that the occupants were concealing contraband in the cell does not violate either the Fourth Amendment or the due process clause; it further held that prisoners have no legitimate expectation of privacy, and the Fourth Amendment does not apply within the confines of a prisoner's cell. Finally, the court observed that random searches of prisoners' cells were "the most effective weapon of the prison administrator in the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband." (468 U.S. at p. 528 [82 L.Ed.2d at p. 404].)

In *People* v. *West* (1985) 170 Cal.App.3d 326, 330-331 [216 Cal.Rptr. 195], this court upheld a body cavity search of 40 to 44 inmates returning to a county honor farm from work furlough after the prison officials received information that marijuana was to be brought into the facility. In that case we surveyed the heightened interest in prison security and other penological objectives: "Internal security is a compelling governmental interest justifying restrictions on prison inmates' privacy and related rights. [Citation.] The scope of a prisoner's Fourth Amendment rights must be narrowed to accommodate institutional objectives [citation], but a prisoner loses only those rights that need be sacrificed to serve legitimate penological needs. [Citation.] As a result of the decreased expectation of privacy by inmates and the exigencies inherent in a prison environment, the government is not required to obtain a warrant or establish probable cause to conduct searches and seizures of inmates. [Citation.] However, as the Fourth Amendment

mandates, searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. [Citation.] The more intrusive the search, the heavier the government's burden of proving the search was reasonable. [Citation.]" (170 Cal.App.3d at p. 331.)

The guidelines enumerated in *Bell* v. *Wolfish, supra,* govern and must be applied in light of the security needs of the prison and the greatly diminished expectation of privacy of prison inmates.

In addition to the serious security dangers caused by smuggling weapons and other contraband referred to in *Bell* v. *Wolfish,* it is common knowledge prisoners fashion all sorts of makeshift knives, shivs and drug paraphernalia and conceal such items in their body cavities. ■ In the instant case the prisoners involved were from the high risk security housing unit and were being transported to a similar unit in Tehachapi. Because any inmate-fashioned or smuggled contraband would be too easily discovered if left in the prisoner's cell or concealed in the clothing or accompanying baggage of the prisoner, a transfer of the prisoners from Folsom to Tehachapi posed a heightened risk of such objects being concealed in the rectal or other body cavities. Obviously, an outer body clothing or baggage search would not have revealed the presence of such contraband. The receiving institution had a reasonable institutional need to take reasonable means to prevent the introduction of such contraband into Tehachapi. Under these circumstances, we believe it to be entirely reasonable, within the meaning of the Fourth Amendment, for the Tehachapi prison authorities to use the least intrusive method available to detect the possible presence of such contraband concealed within the body of the incoming inmates. Thus justification for initiating the search was present. (See *Daugherty* v. *Harris* (10th Cir. 1973) 476 F.2d 292, 294.)

Turning to the scope and manner of the intrusion, we first observe the X-ray was done by a specialized X-ray technician. In our view, an X-ray is far less humiliating, degrading, invasive, annoying and physically uncomfortable than a physical viewing of the anal cavity or physical invasion of the rectal cavity. An X-ray search does not rise to the level of a body cavity search in the traditional sense.

X-rays have been used and approved in several body cavity search cases. Thus, *United States* v. *Montoya De Hernandez* (1985) 473 U.S. 531, 545 [87 L.Ed.2d 381, 393-394, 105 P.2d 3304], Justice Stevens concurring, suggested the appropriateness of an X-ray rather than a rectal invasion. In *People* v. *Valenzuela* (1984) 151 Cal.App.3d 180, 185 [198 Cal.Rptr. 469], an X-ray was used and approved without discussion.

Notwithstanding the conclusory statements by several United States Courts of Appeal in border search cases that X-rays may pose health problems, those courts nevertheless have upheld X-ray searches. (See *United States* v. *Oyekan* (8th Cir. 1986) 786 F.2d 832; *United States* v. *Quintero-Castro* (9th Cir. 1983) 705 F.2d 1099, disapproved on other grounds in *United States* v. *Montoya De Hernandez, supra,* 473 U.S. 531, 540-541 [87 L.Ed.2d 381, 390-391]; *United States* v. *Ek* (9th Cir. 1982) 676 F.2d 379.)

"Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, . . ." (*Bell* v. *Wolfish, supra,* 441 U.S. at p. 560 [60 L.Ed.2d at p. 447]), we conclude the X-ray search under all the ambient circumstances of this case was reasonable within the meaning of the Fourth Amendment.

We hasten to add, however, that we do not suggest prison authorities could conduct a body cavity search on prisoners merely because they are prison inmates without more. There must be some circumstance or information in addition to the mere fact of imprisonment to justify such an invasive procedure.

We further point out that in this case there is no evidence that appellant was X-rayed other than on the one occasion. By this opinion we do not mean to authorize the repeated and frequent use of X-ray searches absent a showing by the prosecution that they pose no significant risk of harm to the inmate being X-rayed.

Next, appellant asserts that because the search was conducted in violation of regulations contained in the California Department of Corrections Administrative Manual, the search was unreasonable under the Fourth Amendment. We take judicial notice of those regulations (Evid. Code, § 452, subds. (b) & (c)).

Section 4861 of the administrative manual states: "A body cavity search of an inmate will only be initiated when there is reasonable cause to believe an inmate has secreted contraband within a body cavity." While an X-ray search is not a body cavity search in a conventional sense, assuming section 4861 was not complied with, the issue here is whether evidence is subject to suppression and therefore inadmissible under the Fourth Amendment to the United States Constitution. ■ Unless a violation of a statutory or administrative provision rises to constitutional dimensions, violation of the statute or regulation does not render the evidence inadmissible per se. As we said in *People* v. *Brannon* (1973) 32 Cal.App.3d 971 at page 975 [108 Cal.Rptr. 620]: "It is elemental that the illegality tainting evidence and rendering it inadmissible is illegality flowing from the violation of a defend-

ant's constitutional rights—primarily those involving unlawful searches and seizures in violation of the Fourth Amendment to the United States Constitution and the essentially identical guarantee of personal privacy set forth in article I, section 19, of the California Constitution. [Citations.] Evidence obtained in violation of a statute is not inadmissible per se unless the statutory violation also has a constitutional dimension." (See also *People* v. *French* (1978) 77 Cal.App.3d 511, 522 [143 Cal.Rptr. 782].)

As we have discussed, the Fourth Amendment in a prison setting requires much less than "reasonable cause" to conduct a body cavity search. The Fourth Amendment governs.

■ Lastly, appellant argues the X-ray search of his body constituted cruel and unusual punishment in violation of the Eighth Amendment to the federal Constitution. For at least two reasons the argument must fail. While appellant did assert in the trial court the procedure was medically dangerous, the assertion was made in conjunction with his suppression motion under the Fourth Amendment. The cruel and unusual punishment argument under the Eighth Amendment was not mentioned. Thus he is precluded from raising this argument for the first time on appeal. (Evid. Code, § 353; *People* v. *Smith* (1986) 180 Cal.App.3d 72, 80 [225 Cal.Rptr. 348]; *People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

Secondly, for such a claim to succeed, appellant must show a deliberate indifference to serious medical needs rising to a level of unnecessary and wanton pain. (*Vaughan* v. *Ricketts* (9th Cir. 1988) 859 F.2d 736, 741-742.) There is no evidence to support such a claim in the instant action. Even if there were sufficient facts to support a violation of the Eighth Amendment, this would entitle appellant to sue prison authorities for a civil rights violation pursuant to 42 United States Code section 1983, not to a suppression of evidence obtained as a result of such a search. (See *Vaughan* v. *Ricketts, supra*, 859 F.2d at pp. 738-741.)

The judgment is affirmed.

Ardaiz, Acting P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied January 10, 1990, and appellant's petition for review by the Supreme Court was denied March 14, 1990.