Filed 10/3/14  P. v. Brown CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KERA K. BROWN,<br><br>    Defendant and Appellant. | B253428<br><br>(Los Angeles County<br>Super. Ct. No. MA057962) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Christopher G. Estes, Judge.  Affirmed.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Victoria B. Wilson and Lance E. Winters, Assistant Attorneys General for Plaintiff and Respondent.

_____

Kera K. Brown pled no contest to possession of a firearm by a felon and admitted having served a prior prison term. He now requests this court review the trial court's ruling on his *Pitchess*[1] motion. This issue is not cognizable on appeal, however. We thus affirm the judgment.

**FACTS**

On November 15, 2012, Los Angeles County Sheriff's deputies conducted a parole compliance search for Troy Webster, who was believed to live in apartment number 4 in a building located in the city of Palmdale. During the course of the search, the officers encountered Brown, Tyrone Ferguson, and Alicia Deyon, but not Webster. The officers searched a car parked in the space allotted for apartment number 4 and discovered a loaded revolver and a bank statement with Brown's name on it. A key to the car was later discovered in Brown's shoe and Brown admitted he owned both the car and the gun.

Brown was charged with one count of possession of a firearm by a felon in violation of Penal Code[2] section 29800, subdivision (a)(1), one count of having a concealed firearm in a vehicle in violation of section 25400, subdivision (a)(1), and one count of possession of ammunition in violation of section 30305, subdivision (a)(1). It was further alleged that Brown suffered prior convictions pursuant to sections 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i).

Prior to trial, Brown filed a *Pitchess* motion for discovery of the personnel information of the deputies who arrested him. In support of his *Pitchess* motion, Brown's public defender submitted a declaration which stated in relevant part:

"2. Deputy Bertieri (453065) alleges: On 11/15/12, he responded to a location to conduct a parole compliance search of an active parolee with search conditions, by the name of Troy Webster. They approached a multi-unit apartment complex and contacted a black male by the name of Ferguson who stepped out of apt #4.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[2] All further section references are to the Penal Code unless otherwise specified.

Ferguson stated Mr. Webster was arrested about 2 weeks ago. Ferguson stated he was on probation for possession of narcotics for sale. [An officer] conducted a probation compliance check. Officers also contacted a black male adult later identified as Brown and a female black adult inside of apartment #4. Officers asked Ms. Deyon, the female black adult whether any vehicles belonged to them. She stated the black car parked in their assigned carport stall #4 was theirs. Deputies went downstairs and located a black Chevy Caprice 4-door which Deputy Smith found unlocked. Deputies advised Brown of his *Miranda* rights while in the presence of Deputy Smith and Deputy Bertieri. Brown replied that it wasn't his vehicle. Deputy Phillips asked Brown why did he have paperwork in his name in the vehicle if it wasn't his vehicle. Brown replied, it's his car and he just bought it. Deputy Phillips asked him again about the revolver. Brown stated he had the heat for protection because his brother was killed a year ago. Brown was asked about a key in his left shoe. He stated it was the key to his black Chevrolet Caprice. Brown was asked why he was hiding the key in his shoe. Brown stated he was hiding it because he didn't want us to know it was his car.

"3. The defendant denies now and shall deny at trial that the allegations are true. Mr. Brown denies having any knowledge that the gun was in the vehicle, denies ever possess[ing] the handgun, and denies that the vehicle was his or that he had permission to enter into or place property within the vehicle.

"4. The defendant denies that he was ever *Mirandized* by any of the officers who conducted the investigation and arrest. He also denies that he made any admission to any officers that he had just purchased the vehicle.

"5. The defendant denies that he said he had the gun for protection because his brother was killed a year ago. Mr. Brown also denies telling any officer that he was hiding the key because he didn't want officers to know it was his car.

"6. Mr. Brown will agree that he did tell officers that the vehicle belonged to a friend of his who had been arrested, however, Mr. Brown did not operate the

vehicle and did not have permission to enter into or place anything into the vehicle at any time.

"7. In addition, Mr. Brown denies that his paperwork was inside the vehicle. Mr. Brown is adamant that the paperwork the officers confiscated and claimed was within the vehicle, was actually paperwork taken from Mr. Brown's room during the search of apartment #4.

"8. Finally, Mr. Brown denies that the key confiscated from his shoe is a key which could be used to operate the vehicle."

The trial court granted Brown's motion in part, narrowing the information sought to evidence of acts of dishonesty or other acts of misconduct committed by Deputy Bertieri, who wrote the police report. The trial court then conducted an in camera review of the personnel files for Deputy Bertieri and disclosed information relating to one incident.

Brown subsequently filed a motion to suppress under section 1538.5, contending the search of the car was illegal. The motion was denied. Trial by jury commenced November 19, 2013. After the presentation of the prosecution's case, Brown entered into a plea agreement whereby he pled no contest to one count of possession of a firearm by a felon and admitted to the prior prison term. The remaining two counts were dismissed. Brown was sentenced to a total of four years in state prison, reflecting the upper term of three years on the firearm possession charge plus one year for the enhancement under section 667.5, subdivision (b). Brown timely appealed.

## DISCUSSION

Brown requests this court review the transcript of the in-camera hearing and the documents considered by the trial court in connection with his *Pitchess* motion. We decline to do so, finding review to be procedurally barred.

Generally, an appellate court must independently review the records sealed pursuant to a *Pitchess* motion upon request by the appellant. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.) However, this request may not be cognizable on appeal if the judgment stems from a plea agreement. A defendant must obtain a certificate of probable

4

cause to appeal when he or she pleads guilty or no contest. (§ 1237.5.) This is because a guilty or no contest plea admits every element of the crime charged and issues concerning the defendant's guilt or innocence are not cognizable on appeal. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1364.) As a challenge to the legality of the discovery process, appellate review of a *Pitchess* motion is included in this rule and generally cannot be challenged after a guilty or no contest plea. (*People v. Hunter* (2002) 100 Cal.App.4th 37, 42-43.) The certificate is not required, however, when the defendant appeals a post-plea ruling or the denial of a motion to suppress under section 1538.5. (Cal. Rules of Court, rule 8.304(b)(4).)

Brown relies on *People v. Collins* (2004) 115 Cal.App.4th 137 (*Collins*) to argue we may consider the issue pursuant to section 1538.5, subdivision (m), which provides "[a] defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty." (§ 1538.5, subd. (m).) Relying on section 1538.5, subdivision (m), the *Collins* court held that a trial court's ruling on a *Pitchess* motion may be considered on appeal if the *Pitchess* motion is intertwined with the suppression motion and directed to the legality of the search and seizure. (*Collins, supra,* at pp. 150-151.) In *Collins,* the defendant's *Pitchess* motion sought information concerning the officers' "'illegal activities, improper tactics, dishonesty, planting evidence, improper search and seizure, and harassment'" because the defendant contended the officers "'failed to follow search procedures[,]'" "'tamper[ed] with evidence[,] acting without probable cause on an unreliable and bogus confidential letter that was destroyed by design.'" (*Id.* at pp. 149-150.)

Here, Brown's *Pitchess* motion merely sought evidence to impeach Deputy Bertieri's credibility at trial. He did not contend the search was improper. To that end, Brown sought evidence of any acts of "dishonesty" committed by the officers in question. He further defined "dishonesty" to include false arrest, fabrication of evidence or probable cause, filing or writing false police reports, perjury, planting evidence or using false police reports to cover up the use of excessive force, improper police tactics, or

5

making false or misleading internal reports. In support of his motion, his attorney submitted a declaration which stated the police lied about advising Brown of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, and denied that Brown admitted to any officers he owned the car or the gun. The *Pitchess* motion did not seek any evidence of illegal searches and, unlike in *Collins*, did not contend the search was illegal. Thus, we conclude that the *Pitchess* motion was not intertwined with the suppression motion and cannot be reviewed on appeal under section 1538.5, subdivision (m).

Brown contends, "the motion expressly stated that the discovery was necessary in order to properly prepare any pre-trial motions where Bertieri's credibility would be in issue" and the "motion to suppress clearly qualifies as a pre-trial motion 'implicating' Bertieri's credibility. Indeed, the legality of the search rested entirely on the Deputy's testimony that he thought [Brown] might be Webster, and that Deyon told him the car was 'theirs,' thereby justifying the search on the ground that it was legal, based on Ferguson's probationary search clause . . . Given the centrality of Bertieri's credibility to the determination of the suppression motion, any *Pitchess* information casting doubt on Bertieri's credibility would have been helpful to appellant's argument that the search was arbitrary, amounted to harassment, and was the product of a ruse."

Notwithstanding Brown's general attack on Bertieri's credibility, he specifically denied that he was given *Miranda* warnings, that he admitted the car and gun were his, that he recently purchased the car, that the key in his shoe was for the car, or that any of his own papers were found in the car. He did not dispute Bertieri's account that Deyon told the deputies the car was "theirs" or that Ferguson admitted he was subject to a probationary search The legality of the search of the car depended solely on these two facts, which are undisputed in the *Pitchess* motion. As a result, Brown's *Pitchess* motion is not intertwined with his suppression motion.

6

**DISPOSITION**

The judgment is affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.