Filed 4/23/25  P. v. Johnson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICHARD K. JOHNSON,<br><br>    Defendant and Appellant. | F086293<br><br>(Super. Ct. No. DF013055A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted defendant Richard Johnson of battery by a prisoner on a non-confined person.  He was sentenced to eight years in prison.  Before trial, Johnson moved to compel production of certain documents from the personnel files of two correctional

officers involved in the incident, alleging they used excessive force and falsified their reports. The trial court granted Johnson's request. Thereafter, Johnson filed two other motions to compel discovery. On appeal, Johnson argues the court erred in denying his final motion to compel discovery. He contends he provided an adequate factual scenario to grant the motion. In the alternative, he argues his counsel was ineffective for failing to request judicial notice of the prior discovery motion's factual scenario and for failing to establish a factual scenario adequate to entitle him to discovery of personnel files of other named correctional officers involved in the incident.

Johnson further contends an allegedly offensive comment about his race was made by a correctional officer prior to the incident violated the California Racial Justice Act[1] (Pen. Code,[2] § 745). He argues if the issue was forfeited based upon the failure to bring a motion on these grounds, his counsel was ineffective on this basis. Johnson also argues his counsel was ineffective for failure to bring a discovery motion for development of facts pursuant to the RJA. We reject Johnson's contentions and affirm.

## PROCEDURAL BACKGROUND

On January 30, 2018, Johnson filed a motion for discovery pursuant to Evidence Code section 1043 and *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), seeking discovery and disclosure of the personnel records of four correctional officers: Eric Smith, Shauna Early, Todd Callen, and Benjamin Lomely.

On February 16, 2018, the California Department of Corrections and Rehabilitation filed an opposition to Johnson's motion for discovery.

On March 1, 2018, the trial court held a hearing on Johnson's motion for discovery. The court held Johnson established a plausible factual scenario and ordered an

---

[1] We will refer to the California Racial Justice Act as the Racial Justice Act or RJA.

[2] Undesignated statutory references are to the Penal Code.

2.

in camera review of the confidential personnel records of Smith and Early for veracity only. It further ordered an in camera review of the confidential personnel records of Callen and Lomely for veracity and excessive use of force.

On March 14, 2019, Johnson filed a second *Pitchess* motion seeking discovery and disclosure of the personnel records of the same four correctional officers listed in his first motion and an additional officer, Daniel Guitron.[3]

On September 16, 2019, Johnson filed a third *Pitchess* motion seeking discovery and disclosure of the personnel records of Callen, Lomely, and Guitron as well as other named correctional officers: Kimberly Joseph, Isaac Lozano, Jaime Short, and Jaime Felix.

On October 7, 2019, the California Department of Corrections and Rehabilitation filed an opposition to Johnson's third *Pitchess* motion. On October 17, 2019, a hearing was held pursuant to the third *Pitchess* motion. The trial court denied the motion without conducting an in camera review.

On April 10, 2023, the Kern County District Attorney filed an amended information charging Johnson with battery by a prisoner on a non-confined person (§ 4501.5, count 1). The amended information further alleged the following aggravating factors: the crime involved great violence or great bodily harm (Cal. Rules of Court,[4] rule 4.421(a)(1)), Johnson engaged in violent conduct which indicates a serious danger to society (rule 4.421(b)(1)), Johnson's prior convictions are numerous or of increasing seriousness (rule 4.421(b)(2)), and Johnson served a prior prison term (rule 4.421(b)(3)). The amended information also alleged Johnson suffered three prior serious felony

---

[3] The record before us does not include a ruling on the second *Pitchess* motion. It appears the trial court did not rule on it.

[4] Undesignated rule references are to the California Rules of Court.

3.

convictions (§ 667, subd. (a)), bringing him within the provisions of the Three Strikes law.  (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

On April 14, 2023, a jury found Johnson guilty as charged on count 1.  In a bifurcated proceeding, the trial court found true beyond a reasonable doubt the three prior strike allegations and the following aggravating factors:  Johnson engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)), his convictions were numerous or of increasing seriousness (rule 4.421(b)(2)), and he served a prior prison term (rule 4.421(b)(3)).  The court did not find true that the crime involved great violence or great bodily harm (rule 4.421(a)(1)).

On May 15, 2023, the trial court sentenced Johnson on count 1 to the upper term of four years, doubled to eight years for the strike prior.

**FACTUAL BACKGROUND**

## A.  The Prosecution's Case

On January 27, 2017, Callen worked as a correctional officer at a prison in Kern County.  He maintained security in the prison and escorted inmates throughout the facility.  On that morning, while working in the program office in "Facility A", Callen responded to an incident in the hallway of the program office.  He was on his way back through the hallway of the program area when he encountered Johnson.  Callen ordered Johnson out of the program area and told him to go back to the yard because he was "out of bounds" and not supposed to be in that area.  It was a violation of the prison rules for Johnson to be in the hallway of the program area.  Agitated, Johnson left the area.

Soon after, Johnson returned to the lieutenant's office for a rules violation hearing. When he encountered Callen a second time he said, "fuck you, Callen.  Do [not] … ever talk to me like that again."  Callen told Johnson to "calm down" but he was still murmuring expletives to Callen.  Johnson then got in a "fighting stance" with his body

4.

slightly turned and his fists clenched. He told Callen, "fuck you, you bitch[.]"**5** Callen tried to deescalate the situation by again telling Johnson to "calm down." Callen also put his hand out to make sure Johnson did not come into his personal space, but immediately thereafter, Johnson swung at Callen with his right fist and struck Callen on the left side of the head.

After Johnson punched Callen, Callen grabbed Johnson by his upper chest with both of his hands and pushed him back towards a printer that was on a stand. Johnson hit Callen again on the right side of the face with his left hand. After Callen had been punched twice, he ordered Johnson to "get down" but Johnson failed to listen. The altercation continued through the doorway of the lieutenant's office. Both Callen and Johnson fell to the ground. Lomely was about ten feet away after when he saw Johnson punch Callen twice. He assisted Callen and got Johnson on the ground. Guitron responded to the incident after Johnson was on the ground and put handcuffs on Johnson. After Johnson was in handcuffs he no longer resisted, and he was escorted out of the lieutenant's office by Guitron.

Short was assigned to the Investigative Services Unit in the prison, tasked to investigate crimes, collect and document evidence. After Short read Johnson his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Johnson agreed to speak to Short about the incident and made four statements. The interview lasted less than five minutes.

First, Johnson told Short he "blacked out" and could not recall what happened. Next, Johnson said, "I do [not] know. It just happened." Johnson then told Short, "I [am not] no punk. I [am] not going to let no man put his hands on me." Finally, Johnson said, "Callen tried to put his hands on me, then it was on." Johnson continued, "I

---

**5** Lomely heard Johnson's comments and testified Johnson told Callen, "Fuck you. You are a little bitch."

punched him in his head, and we started fighting." Short did not record Johnson's statements with his bodycam or a tape recorder.

## B. The Defense's Case

Johnson testified in his own defense. On the morning of January 27, 2017, he had an appointment in the lieutenant's office and went into the building where the lieutenant's office was located. Johnson knocked on the door and saw about four correctional officers already in the office. Then, he opened the door. Callen walked toward Johnson and told him to "take [his] black ass or ass back out the door."[6] Callen also told Johnson he would come get him in five to six minutes. In response, Johnson said, "man, why you talking to me like that? You know, I [am] a man too."

Johnson waited about six minutes, and Callen told him to come into the office. Then, Johnson told Callen, "listen, man, you need to learn how to talk to somebody, okay?" Callen said something "smart and disrespectful." So, Johnson told him, "F you, bitch." Johnson claimed that after he called Callen a "bitch," Callen initiated a physical altercation, wrapped his hands around Johnson's throat and choked him. Johnson "reacted" and punched Callen about four times and knocked him down, then stepped back.

Smith tackled Johnson and placed him in handcuffs. After Smith handcuffed Johnson, Callen got up and slammed Johnson's head to the floor about four times and hit him in the face, kicked him in the mouth, and knocked out his left tooth. Later, Johnson admitted he was not bleeding from his mouth or face and did not have a "busted lip."

After the incident, Johnson was taken to the gym at the prison. About two hours later, Short questioned Johnson. Johnson told Short that Callen was "choking me out and I had to defend myself." He continued, "[Callen] put his hands on me; so what was I

---

[6] Hereafter we refer to this alleged statement as "the alleged offensive comment."

6.

supposed to do[?]" Johnson also testified he told Short about the "racial comments" Callen made prior to the incident.

Johnson insisted he told Short everything that happened during the incident. He initially said Short forgot to put the alleged offensive comment in his report. On cross examination, when Johnson was asked why the other statements, including the alleged offensive comment, and injuries he allegedly sustained were not included in Short's report, Johnson said that Short was "lying." On re-direct, Short testified Johnson never told him about Callen's alleged offensive comment.

## DISCUSSION

### I.  *Pitchess* Motion

Johnson contends the trial court abused its discretion when it denied his third *Pitchess* motion for pretrial discovery as to Callen and Lomely's personnel files because defense counsel presented a plausible factual scenario in the first *Pitchess* motion, which demonstrated good cause for the third motion's renewed discovery request. The People disagree with Johnson's arguments. We agree with the People.

#### A. Additional Background

Johnson filed a third *Pitchess* motion for discovery requesting disclosure of the personnel records of correctional officers Felix, Joseph, Lozano, Short, and Guitron, and requested renewed disclosure of the files of Callen and Lomely.

Defense counsel stated in her affidavit that the District Attorney informed her it was "advisable" to file another *Pitchess* motion. She asked the court to take judicial notice of the "previously filed *Pitchess* motion.". Defense counsel's affidavit further stated she was renewing the request for the personnel files of Callen and Lomely "in light of the email" from the District Attorney and because the previous *Pitchess* motion was granted "over one year" ago.

7.

The motion requested information and records relating to dishonesty, falsifying and omitting information, instances of unbecoming conduct, and improper use of procedures for all officers: Felix, Joseph, Lozano, Short, Guitron, Callen, and Lomely. The motion requested the renewed disclosure of information and records for excessive use of force as to Callen and Lomely only. In support of Johnson's motion, defense counsel asserted these documents were material to the case because he was accused of "resisting and delaying a peace officer." Moreover, defense counsel asserted that the evidence of a law enforcement officer's tendency to be dishonest supported Johnson's theory in the case.

The trial court denied Johnson's renewed disclosure request of Callen and Lomely's personnel files as well as the personnel files of Felix, Joseph, Lozano, Short, and Guitron. The court's reasoning was as follows:

> "[T]here is no plausible, factual scenario related to dishonesty[,] … excessive force[,] … following procedures[,] or conduct unbecoming as it relates to any of the officers.

> "The actual argument in favor of the court at least getting to that in camera hearing in some fashion is that the deputy district attorney indicated it would be advisable to file this motion as it relates to all these officers. There [is] no authority in front of the court presented by the moving party as to why that would suffice in lieu of a factual scenario. The … motion [is] … denied."

### B. Applicable Legal Principles

In *Pitchess, supra*, 11 Cal.3d at pages 536–537, the California Supreme Court held that a criminal defendant has a limited right to discovery of peace officer personnel records and established the guidelines and motion procedure for such discovery. A defendant is entitled to discovery of a police officer's confidential personnel records if the records contain information that is relevant to the defense. (*Id.* at pp. 537–538; Evid. Code, §§ 1043; 1045.) To exercise the discovery of personnel records, the defendant must file a motion supported by affidavits showing "good cause for the discovery or

8.

disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation …" and also by "stating upon reasonable belief that the governmental agency" has the records at issue. (Evid. Code, § 1043, subd. (a), (b)(3).) The information must be requested with "adequate specificity to preclude the possibility that [the] defendant is engaging in a 'fishing expedition.' " (*Pitchess,* at p. 538.)

In *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1025 (*Warrick*), our Supreme Court clarified the good-cause requirement for discovery of police personnel records. Specifically, the attorney affidavit must give a specific "factual scenario" that is "plausible when read in light of pertinent documents." (*Ibid.*) A factual scenario may consist of a denial of the facts asserted in the police report and does not have to be reasonably probable or credible. (*Id*. at pp. 1024–1025.) A scenario sufficient to establish a plausible factual foundation "is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id*., at p. 1026.)

"To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation." (*Warrick, supra,* 35 Cal.4th at p. 1026.) The court accomplishes this by asking the following questions: "Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense? Under what theory would the requested information be admissible at trial?" (*Id*. at p. 1027.) The court must balance two competing interests, the peace officer's claim to confidentiality and the defendant's right to relevant information. (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53.)

9.

Whether the defendant showed good cause is within the trial court's sound discretion and a party challenging the court's ruling on a *Pitchess* motion for discovery is reviewed for abuse. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039; *People v. Samayoa* (1997) 15 Cal.4th 795, 827.) The court abuses its discretion when it "exercise[s] its discretion in an arbitrary, capricious or patently absurd manner that result[s] in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

### C. Analysis

We first turn to whether the trial court abused its discretion when it failed to grant Johnson's renewed disclosure request as to the confidential personnel files of Callen and Lomely. We conclude the purported factual scenario did not meet the standards required to compel an evidentiary hearing even under the " 'relatively low threshold for discovery' " used to determine good cause to compel *Pitchess* discovery. (*Warrick, supra,* 35 Cal.4th at p. 1019.)

Here, defense counsel only made a bald assertion that she was advised by the district attorney to file the motion. Johnson's third motion failed to present a "specific factual scenario" as to why the alleged misconduct of Callen and Lomely that may have occurred within the year after the first *Pitchess* motion was granted was relevant to Johnson's claim of self-defense.[7]

Johnson argues the factual scenario set forth in the first *Pitchess* motion was sufficient to trigger an in camera review of Callen and Lomely's more recent files. We disagree. The factual scenario set forth in Johnson's first *Pitchess* motion provided an insufficient basis for his renewed request. The prior factual scenario failed to explain what new information may be relative to his defense in the more recent personnel files of

---

[7] The court previously granted Johnson's first *Pitchess* motion as to veracity and excessive use of force of both Callen and Lomely and indicated it would not consider already litigated issues.

Callen and Lomely. In *Warrick*, the defendant did not merely make bald assertions but provided a specific factual scenario that included an alternate version of events that was internally consistent and plausible. (*Warrick, supra*, 35 Cal.4th at p. 1027.) In contrast, Johnson failed to provide any facts that were consistent with the relevance of obtaining Callen and Lomely's personnel records as to veracity and use of force that were different than what was already produced following the first motion. The court did not abuse its discretion in denying Johnson's final *Pitchess* motion.

## II. Ineffective Assistance of Counsel based on *Pitchess* Motion

Johnson argues his counsel provided ineffective assistance on two grounds. First, Johnson argues his counsel provided ineffective assistance for failing to request the trial court take judicial notice of his first *Pitchess* motion at the hearing on his third motion. Johnson also contends his counsel failed to properly draft his final discovery motion. Specifically, Johnson argues his counsel did not adequately set forth a plausible factual scenario sufficient to establish good cause for discovery of the personnel records of Felix, Joseph, Lozano, Short, and Guitron. The People disagree, arguing Johnson cannot show deficient performance or prejudice on either of his claims. We agree with the People.

### A. Applicable Legal Principles

To prevail on an ineffective assistance of counsel claim, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*); *People v. Ledesma* (2006) 39 Cal.4th 641, 745–746.) Tactical errors are generally not deemed reversible, and counsel's decisions are evaluated in the context of the record. (*Strickland,* at p. 689.)

11.

The reviewing court must determine whether the record contains an explanation for the challenged conduct. (*People v. Pope* (1979) 23 Cal.3d 412, 425 (*Pope*).)[8] If the record sheds light on why counsel acted or failed to act in the manner challenged, the conviction will be affirmed if counsel's acts or omissions resulted from an informed tactical choice within the range of reasonable competence. (See *People v. Fain* (1969) 70 Cal.2d 588, 600.) In contrast, "where the record shows that counsel has failed to research the law or investigate the facts in the manner of a diligent and conscientious advocate, the conviction should be reversed since the defendant has been deprived of adequate assistance of counsel." (*Pope*, at pp. 425–426.)

However, in some cases the record on appeal is silent regarding why counsel acted or failed to act in the manner challenged. These cases are affirmed on appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation[.]" (*Pope*, *supra*, 23 Cal.3d at p. 426.) An assertion counsel was ineffective on a silent record is more appropriately made in a petition for habeas corpus, which promotes judicial economy.[9] (*People v. Dickey* (2005) 35 Cal.4th 884, 926 (*Dickey*); see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

## B. Analysis

With these principles in mind, we first consider whether Johnson received ineffective assistance for his counsel's failure to request the trial court take judicial notice of his first *Pitchess* motion. Defense counsel requested the court take judicial notice of the previous *Pitchess* motion in her final motion to compel discovery. There is nothing in the record showing the court did not take judicial notice of the first motion. In making its

---

[8] Overruling recognized on another ground in *People v. Delgado* (2017) 2 Cal.5th 544, 559.

[9] A habeas corpus proceeding provides an evidentiary hearing and allows trial counsel the opportunity to set forth his or her reasons for acting or failing to act in the manner challenged. (§§ 1483, 1484; *Pope*, *supra*, 23 Cal.3d at p. 426.)

12.

ruling, the court concluded there was no plausible, factual scenario related to dishonesty or excessive use of force regarding the officers' misconduct justifying a renewed disclosure request. While the record does not show the reason defense counsel did not orally request judicial notice, it is reasonable to conclude defense counsel, acting as a diligent advocate, made a tactical decision not to make an oral request for judicial notice of the first *Pitchess* motion because she may have reasonably believed that there was no basis for an additional request.

However, even if Johnson demonstrated his counsel's performance was deficient, there is no reasonable probability that a different result would have occurred absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also, *People v. Nguyen* (2007) 151 Cal.App.4th 1473, 1478 [the proper standard for reviewing a defendant's posttrial *Pitchess* motion was whether a reasonable probability existed that disclosure of the requested records would have led to a different result at trial].)

Johnson concedes prejudice cannot be shown but requests us to remand the case to the trial court with directions to conduct an in camera hearing. In support of his argument, Johnson cites *People v. Hustead* (1999) 74 Cal.App.4th 410 (*Hustead*). There, the defendant was entitled to discovery of incidents concerning false reports by the arresting officer where the defendant was charged with felony evasion under Vehicle Code section 2800.2 and alleged the officer had lied about his driving maneuvers. (*Id.* at pp. 416–418.) This court found the *Pitchess* motion advanced a plausible factual theory of officer misconduct that supported the defense, and the court abused its discretion by failing to hold an in camera hearing. (*Id.* at p. 418.) However, this court found a "special disposition" was required because the reviewing court could not conclude "that there was any discoverable information" in the officer's file. (*Id.* at pp. 418–419.) Thus, the *Hustead* court remanded the case for an in camera review of the personnel records with directions to grant a new trial only if the court found there was a reasonable probability of a different outcome after the evidence was obtained. (*Id.* at p. 423.) Johnson urges us to

13.

follow this procedure. We decline to do so because *Hustead* differs from the present case.

Defense counsel sought a renewed discovery request for Callen and Lomely's personnel records and asked the trial court to take judicial notice of the previous *Pitchess* motion. Even if defense counsel orally requested or otherwise directed the court to take judicial notice of the factual scenario presented in the first *Pitchess* motion at the hearing, the factual scenario presented in the first *Pitchess* motion was neither complete nor consistent with a renewed discovery request.[10] Unlike *Hustead,* Johnson failed to demonstrate a plausible factual theory to grant his renewed discovery request. We need not remand the case to the court to the conduct an in camera review on the discovery motion because good cause was not shown in the first instance. (*Hustead, supra,* 74 Cal.App.4th at pp. 418–419.) Moreover, prejudice cannot be shown on this record, where judicial notice was requested by defense counsel and there is nothing showing the court did not take judicial notice of the previous *Pitchess* motion.

We then turn to whether Johnson received ineffective assistance for defense counsel's failure to provide a plausible factual scenario as to officers Felix, Joseph, Lozano, Short, and Guitron. The record again does not reveal the reason defense counsel

---

**10** We note the third *Pitchess* motion requested judicial notice of the "previously filed *Pitchess* motion." On appeal, Johnson only argues the first *Pitchess* motion provided an adequate factual scenario, and the court erred in failing to grant his third motion on that basis. He does not argue the facts set forth in the second motion provided an adequate factual scenario. However, even were we to consider the facts set forth in both the first and second *Pitchess* motions, we still find no prejudice on this record. In the second motion, defense counsel stated she received information from the investigator for the district attorney regarding Callen's use of force on an inmate in 2016. However, because the incident of excessive force occurred in 2016, the time period suggests those documents were already disclosed when the first *Pitchess* motion was granted. There were no further facts showing good cause to support Johnson's renewed request for a different time than what was already covered when the court granted his first discovery motion.

14.

did not provide a plausible factual scenario as to these officers.[11] However, we find defense counsel may have had a reasonable, tactical explanation for not providing an additional factual scenario in the third *Pitchess* motion.

Johnson's theory at trial was that he acted in self-defense. He further argued the witnessing officers used excessive force and falsely reported the incident. Specifically, Johnson claimed the officers who witnessed the incident and wrote incident reports stating Johnson was the initial attacker lied to cover up the assault.[12] Felix, Joseph, Lozano, Short, and Guitron neither witnessed the incident nor was it alleged that the officers used excessive force on Johnson.[13] Thus, the truthfulness of these five officers was not a material issue at trial. (C.f. *Hustead, supra,* 74 Cal.App.4th at pp. 418–419 [*Pitchess* motion supported by declaration of counsel asserting that officer had made material misstatements and stating that officer's credibility would be material issue in trial]; *People v. Gill* (1997) 60 Cal.App.4th 743, 750–751 [good cause for *Pitchess* discovery was established when the defendant sought complaints against the specific officer who searched him and alleged the officer had planted the contraband to cover up for the use of excessive force].)

At the hearing, the trial court rightly pointed out there was no plausible, factual scenario related to dishonesty, excessive force, failing to follow procedures, or

---

[11] We again note that claims of ineffective assistance are more appropriately made in a petition for habeas corpus. (See, e.g., *Dickey, supra*, 35 Cal.4th at p. 926.)

[12] The record includes reports of the incident authored by Lomely, Callen, Smith, and Early. These reports alleged Johnson swung at Callen first. Johnson argued the reports were false, the officers were dishonest and claimed self-defense. We note there is testimony which indicates that there were reports authored by Guitron and Short, however, these reports are not part of the record on appeal. Thus, we will consider only Guitron and Short's testimony at trial. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1249 ["we cannot consider on appeal evidence that is not in the record"].)

[13] While Johnson alleges Guitron witnessed the incident, the record indicates otherwise. Guitron responded to the incident after it occurred.

unbecoming conduct as it related to any of the officers. There was no objection to this conclusion by either party and defense counsel reiterated his entire argument was set forth in his motion. Given the facts of this case, as noted by the court without objection by defense counsel, it is reasonable to assume there was no plausible factual scenario and defense counsel wisely concluded offering any additional facts would be futile. (See, e.g., *People v. Weaver* (2001) 26 Cal.4th 876, 931 [no ineffective assistance of counsel for failure to make a frivolous motion].) Because there was a satisfactory explanation for counsel's inaction, Johnson's ineffective assistance of counsel claim cannot succeed.

Johnson also fails to show he was prejudiced by his attorney's decision not to include a plausible factual scenario as to the misconduct of Felix, Joseph, Lozano, Short, and Guitron in his third *Pitchess* motion. Johnson again concedes prejudice cannot be shown on the record, and requests remand for an in camera review of the personnel files to determine whether he suffered prejudice. (See, *Hustead, supra,* 74 Cal.App.4th at pp. 418–419.) We decline to remand for the reasons set forth below, because Johnson failed to demonstrate a plausible factual theory to grant his discovery request as to Felix, Joseph, Lozano, Short, and Guitron, and, in light of the record, Johnson was not prejudiced by defense counsel's failure to provide a plausible factual scenario as to the five above-named officers. (*Strickland, supra*, 466 U.S. at p. 694 [prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"].)

We first point out that Felix, Joseph, and Lozano did not testify at trial or author reports regarding the incident. The record shows Felix and Lozano escorted Johnson to a holding cell after the altercation, however, there were no statements made by Felix or Lozano in the reporting. Joseph took Callen's picture after the altercation occurred. The photograph was offered into evidence; the record does not show Joseph had any other

16.

involvement in the incident. Guitron responded to the incident after it occurred and assisted Callen and Lomely in placing Johnson in handcuffs.

Short investigated the incident after it took place.[14] Johnson now argues on appeal that he made statements to Short that were omitted from Short's testimony and report, suggesting Short was dishonest. However, the record shows Short's statements substantially comported with Johnson's version of the incident. Johnson testified that he had to "defend" himself against Callen after he "put his hands on [him]." This is consistent with Short's testimony.

We note two instances where Johnson's and Short's testimony differ: Short said Johnson never told him about Callen's alleged offensive comment about his race or his excessive use of force. While Johnson's and Short's testimony differ in these two respects, we cannot conclude Johnson suffered prejudice by his counsel's failure to provide a plausible factual scenario that may have led to the discovery of Short's personnel records. Both Johnson and Short testified at trial, but the jury rejected Johnson's version of events. There is no reason to believe the failure to provide an additional factual scenario in a pre-trial discovery *Pitchess* motion, which may have been successful in obtaining Short's personnel records, impacted the verdict.

In *In re Avena* (1996) 12 Cal.4th 694, 730, the defendant claimed his counsel was ineffective for failing to make a *Pitchess* motion to challenge the officer who the defendant alleged beat him during an interrogation. Our high court rejected the defendant's claim because he did not present any evidence, other than his "bare assertion," to add to the evidence before the court or explain what his counsel would have

---

[14] Short asked Johnson questions regarding the incident and took photos. As previously set forth, Johnson's four statements to Short are as follows: First, Johnson told Short "he did [not] know what happened." Then, Johnson said, "[i]t just happened." Third, Johnson told Short, "I [am not] no punk. I [am] not going to let no man put his hands on me." Lastly, Johnson stated, "Callen tried to put his hands on me, then it was on. I just punched him in the head."

discovered had he made a *Pitchess* motion. (*Avena*, at p. 730.; see also *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1024–1025 [rejecting " 'fishing expeditions' " into personnel records based on an unsupported allegation that police officers are known to lie or that an "officer's credibility is always at issue"].) Similarly, the allegations here allow for little more than speculation about what may have been discovered or added to the evidence from the personnel records of Felix, Joseph, Lozano, Short, and Guitron. (See, e.g., *People v. Collins* (2004) 115 Cal.App.4th 137, 151 [trial court's denial of the defendant's *Pitchess* motion was not an abuse of discretion when the defendant failed to show how the officers were involved or allege any facts that provided reason to believe misconduct had occurred]; see also *People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1341.) The record fails to show Johnson suffered prejudice by his attorney's failure to include an additional factual scenario as to Felix, Joseph, Lozano, Short, and Guitron in his third *Pitchess* motion.

We also reject Johnson's claim that his due process rights were violated by defense counsel's failure to provide a plausible factual scenario for the renewed discovery request as to Callen and Lomely and the alleged misconduct as to Felix, Joseph, Lozano, Short, and Guitron that led to the denial of Johnson's third *Pitchess* motion. A defendant has the right to material evidence to receive a fair trial. (*Brady v. Maryland* (1963) 373 U.S. 83, 86–87 [nondisclosure by the prosecution violates due process of the Fourteenth Amendment "where the evidence is material either to guilt or to punishment"]; *People v. Mooc* (2001) 26 Cal.4th 1216, 1225 [the prosecution has a "constitutional obligation" to disclose "material exculpatory evidence so as not to infringe the defendant's right to a fair trial"].) However, California's *Pitchess* standard allowing defense discovery of officer personnel records "entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial" and creates both a "broader and lower threshold for disclosure than does the high court's decision in *Brady*." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14.) Johnson was unable to

18.

satisfy the *Pitchess* requirements nor was he able to prove prejudice on this record. Therefore, there was no due process violation.

## III. Racial Justice Act

Johnson argues for the first time on appeal that his conviction should be reversed because the statements Callen made to him prior to their altercation reflected law enforcement was biased and the comment was prejudicial to the outcome of his case in violation of the Racial Justice Act (§ 745, subd. (a)(1)). He further contends, if the issue is forfeited, his counsel was ineffective for failing to file a motion on these grounds (§ 745, subd. (c)).

The People respond Johnson forfeited his RJA claim. Reaching the merits, the People assert Johnson's claim fails because Callen was a victim and not "a law enforcement officer involved in the case." Specifically, the People maintain Callen was not involved in the collection of evidence and did not make a racial comment during any of the proceedings.

We conclude Johnson forfeited his RJA claim, and he failed to establish ineffective assistance of counsel.

### A. Additional Background

In defense counsel's affidavit filed in support of Johnson's first *Pitchess* motion, defense counsel claimed prior to the altercation, Callen made an alleged offensive comment to Johnson.

At trial, Johnson detailed the verbal exchange leading up to the altercation: he was called for a disciplinary hearing on the prison's loud speaker and knocked on the door to the building where it was held. Callen made an alleged offensive comment to Johnson. Johnson left the building. In response to Callen, Johnson said, "man, why you talking to me like that? You know, I [am] a man too." When Johnson returned to the office, Callen said "something else smart and disrespectful" and because of this, Johnson

19.

told Callen, "F you, bitch." Johnson claimed that after he called Callen a "bitch," Callen initiated a physical altercation.

Callen said he ordered Johnson out of the program area because he was "out of bounds[.]"

Short testified Johnson never told him about Callen's alleged offensive comment during the interview after the altercation.

There were no further comments regarding Johnson's race during any of the trial proceedings.

## B. Overview of California's Racial Justice Act

Effective January 1, 2021, the Racial Justice Act prohibits state criminal convictions or sentences "on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) The purpose of the RJA is "to eliminate racial bias from California's criminal justice system because racism in any form or amount, at any stage of a criminal trial, is intolerable [and] inimical to a fair criminal justice system[.]" (Stats. 2020, ch. 317, § 2, subd. (i).)

"A violation is established if the defendant proves, by a preponderance of evidence, that any of the following" individuals involved in the case, including a judge, attorney, law enforcement officer, expert witness, or juror, "exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(1).) The statute defines the phrase " '[r]acially discriminatory language" as "language that, to an objective observer, explicitly or implicitly appeals to racial bias, including, but not limited to, racially charged or racially coded language, language that compares the defendant to an animal, or language that references the defendant's physical appearance, culture, ethnicity, or national origin. Evidence that particular words or images are used exclusively or disproportionately in cases where the defendant is of a specific race, ethnicity, or national origin is relevant to determining whether language is discriminatory." (§ 745, subd. (h)(4).) Once the defendant has

learned a violation under the RJA occurred, a motion should be made "as soon as practicable[.]" (§ 745, subd. (c).) "After a judgment has been entered, if the court finds that a conviction was sought or obtained in violation of subdivision (a), the court shall vacate the conviction and sentence, find that it is legally invalid, and order new proceedings consistent with subdivision (a)." (§ 745, subd. (e)(2)(A).)

Effective January 1, 2024, a new provision to the RJA was added by the Legislature through Assembly Bill No. 1118 (2023–2024 Reg. Sess.) (AB 1118), permitting a claim to be raised on direct appeal alleging a violation of section 745, subdivision (a), and authorizing a defendant to move to stay the appeal and request remand to the superior court to file a motion. (Stats. 2023, ch. 464, § 1; § 745, subd. (b).) However, "[t]he statute does not state that a defendant may raise a section 745 claim on direct appeal *for the first time* and does not refer to the general appellate rules governing the preservation or forfeiture of claims presented on direct appeal." (*Ibid*; see also *People v. Lashon* (2024) 98 Cal.App.5th 804, 810 (*Lashon*).)

### C. Johnson Forfeited His Claim

Johnson argues Callen exhibited racial bias when he made an alleged offensive comment because Johnson is a "Black man." (§ 745, subd. (a)(1).) Johnson argues his RJA claim may be raised for the first time on appeal, citing *In re Sheena K*. (2007) 40 Cal.4th 875, 887–888, footnote 7, for the proposition that the forfeiture rule is inapplicable when a defendant raises constitutional claims on appeal that involve pure questions of law or when it is uncertain whether the forfeiture rule applies. He requests this court exercise our discretion to reach his RJA claim on the merits. (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 649.)

We are not persuaded this case presents circumstances warranting an exception from general forfeiture rules. Only Johnson injected the alleged offensive comment into the trial proceedings. Johnson's testimony is also ambiguous as to whether the comment occurred. No less than two times Johnson testified Callen made an alleged offensive

21.

comment *or* simply told him to take his "ass" out the door. Johnson's claim is not a constitutional challenge that presents pure question of law but requires reference to and consideration of circumstances of the case and the record. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1035–1036.)

Moreover, defense counsel became aware of Callen's alleged offensive comment at least on or before January 2018 when he filed Johnson's first *Pitchess* motion. Defense counsel never filed a motion based on the RJA even though the jury rendered a guilty verdict over two years after the RJA became effective.[15]

We note section 745, subdivision (b) was amended by AB 1118 to permit a defendant to "raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence." However, two recent decisions held the general forfeiture rules apply to section 745 claims raised on direct appeal despite AB 1118. (*People v. Singh* (2024) 103 Cal.App.5th 76, 113 (*Singh*); *Lashon, supra,* 98 Cal.App.5th at p. 812 ["a section 745 claim like any other appellate claim, is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court"].)

The court in *Lashon* considered the legislative history of the RJA and noted "the Legislature did not intend to allow a defendant to pursue such a claim for the first time on direct appeal where it could have been but was not raised in the trial court." (*Lashon, supra,* 98 Cal.App.5th at p. 813; see also *Singh, supra*, 103 Cal.App.5th at p. 113 [the defendant forfeited his RJA claim for failure to raise it first in the trial court despite AB 1118's amendment to section 745].)

We agree and apply these authorities to the instant case. Johnson's RJA claim is forfeited for failure to file a motion in the trial court. However, because Johnson

---

[15] An amended information was filed on April 10, 2023, and a jury trial took place a few days later, with the jury rendering a guilty verdict on April 14, 2023.

contends his counsel was ineffective, we exercise our discretion to reach the merits of his contentions. (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 (*Williams*) [an appellate court has authority to reach a forfeited claim].)

### D. Defense Counsel Did Not Provide Ineffective Assistance for Failing to File a RJA Motion

To circumvent forfeiture, Johnson argues his counsel provided ineffective assistance for his failure to file a motion based on a violation of the RJA. As set forth above, to prevail on an ineffective assistance of counsel claim, the defendant must establish deficient performance and resulting prejudice. (*Strickland, supra*, 466 U.S. at p. 687.) "A claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion … must demonstrate not only the absence of a tactical reason for the omission (*People v. Fosselman* [(1983)] 33 Cal.3d [572,] 584), but also that the motion … would have been meritorious if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted." (*People v. Mattson* (1990) 50 Cal.3d 826, 876.)

The record is silent as to why defense counsel failed to file such a motion.[16] However, we find that there was a reasonable, tactical reason why defense counsel failed to file a RJA motion. Defense counsel could have reasonably believed Callen's alleged offensive comment to Johnson was not in violation of section 745, subdivision (a). Johnson injected the alleged offensive comment into the proceedings. No other witness corroborated his version of events. The prosecution and defense did not refer to Johnson's race during the trial, nor was it ever argued Johnson's race was a factor in the altercation. The alleged offensive comment occurred prior to the altercation and had

---

[16] Claims of ineffective assistance on a silent record are more appropriately made in a petition for habeas corpus. (See, e.g., *Dickey, supra*, 35 Cal.4th at p. 926.)

23.

nothing to do with his claim of self-defense. For example, Johnson did not argue Callen initiated the altercation or used "excessive force" because of his racial bias/animus. Accordingly, defense counsel could have reasonably concluded a motion on this basis would not have been meritorious, particularly because the comment was introduced into the trial proceedings by Johnson and all other witnesses' discussion of the events leading up to the altercation did not include language referencing his race.

We also find Johnson failed to establish but for counsel's failure to file a motion, "the result of the proceeding would have been different." (*Strickland, supra*, 466 U.S. at p. 694.) The record is not clear in this case as to whether the trial court would have found, by a preponderance of the evidence, that Callen's alleged offensive comment to Johnson established Callen "exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin," or was a use of "racially discriminatory language about the defendant's race, ethnicity, or national origin" such that it amounted to a violation of section 745, subdivision (a). Here, Johnson argued Callen made an alleged offensive comment. If true, this is "language that references the defendant's physical appearance, culture, ethnicity, or national origin." (§ 745, subd. (h)(4).) However, even assuming Callen made the alleged offensive comment when he ordered Johnson out of the area, there is no evidence that Callen's comment or actions, either implicitly or explicitly, showed racial bias. "Certainly, an officer (or other participant in the criminal justice process), observing that a defendant is Black, could 'unintentionally' treat them differently." (*Bonds v. Superior Court* (2024) 99 Cal.App.5th 821, 829.) But there is no evidence showing Callen ordered Johnson out of the area because of his race; instead, Callen directed Johnson to leave because he was "out of bounds[.]" As previously stated, the language Callen used when he commanded Johnson to leave the area had nothing to do with the altercation or Johnson's defense theory at trial. Johnson's claim is circular: he argues Callen made an alleged offensive comment one time, therefore the RJA was violated.

24.

In *People v. Simmons* (2023) 96 Cal.App.5th 323, 336, a case relied upon by Johnson, the Second District held the prosecutor's comment violated subdivision (a) of section 745 because it equated the defendant's "skin tone and 'ethnic presentation' with deception, implying that [the defendant] was not a credible witness because the color of his skin fooled women and confused strangers." The *Simmons* court found the suggestion that a witness is lying based on nothing more than his complexion is "baseless" and exactly the kind of racially biased language that section 745 targets. (*Ibid*.)

The facts of our case are not analogous. The only racial comments that infiltrated the trial proceedings were elicited by Johnson's own testimony. Neither party urged the jury to convict Johnson on that basis. (Cf. *People v. Stubblefield* (2024) 107 Cal.App.5th 896, 923 [the prosecutor's closing argument statements, arguing that the defendant's race was a central factor in the explanation for the decision not to search the defendant's house for a firearm constituted "racially discriminatory language" in violation of RJA].) Moreover, the evidence shows Callen was the victim in this case and Johnson claimed Callen made the comment to justify his verbal confrontation prior to the altercation.

We also point out that there were several factual disputes as to the precise language used by Callen or whether the comment actually occurred. Johnson testified Callen made an alleged offensive comment, however, Johnson omitted the reference to his race two different times while being questioned at trial. Because of these omissions, it is reasonable to conclude the reference to Johnson's race was simply how he referred to himself rather than a cultural or racially biased term allegedly used by Callen. All other testifying witnesses denied the racial comment was made. This is not a situation in which we could decide, if Johnson made a motion under the RJA, it would have been meritorious. (See, *Singh, supra*, 103 Cal.App.5th at p. 119.)

Johnson fails to persuade us that had defense counsel made a timely motion asserting that the People violated the RJA, the motion would have been granted. Johnson

has not established either deficient performance or the resulting prejudice required to prevail on a claim of ineffective assistance of counsel.

## E. Defense Counsel Did Not Provide Ineffective Assistance for Failing To File a RJA Motion for Discovery

Finally, Johnson argues he received ineffective assistance based on his counsel's failure to file a discovery motion that would have enabled him to develop further facts in support of his RJA motion. Johnson contends his account of the events surrounding the incident provided a plausible scenario that a RJA violation "could or might have occurred" in his case. The People respond Johnson cannot show a plausible factual basis to support his claim or that he suffered prejudice as a result. We agree with the People.

Subdivision (d) of section 745 allows a defendant to file a motion requesting disclosure to the defense of all evidence relevant to a potential RJA violation. Once the defendant has shown good cause, the court shall order the records to be released. (§ 745, subd. (d).) "[T]he good cause requirement for discovery under the [RJA], like the showing required for the disclosure of law enforcement records under *Pitchess*, requires a defendant 'only to advance a plausible factual foundation, based on specific facts, that a violation of the [RJA] "could or might have occurred' in his case." ' " (*People v. Garcia* (2022) 85 Cal.App.5th 290, 296–297 (*Garcia*).) The standard is minimal and even more relaxed than the good cause standard for *Pitchess* discovery. (*Id.* at p. 297.) The RJA counterpart to *Pitchess* materiality is " 'relevan[ce] to a potential violation of [section 745,] subdivision (a).' " (*Young v. Superior Court of Solano County* (2022) 79 Cal.App.5th 138, 160 (*Young*).)

We turn to whether Johnson received ineffective assistance because his counsel failed to move the court for discovery under the RJA. The record is silent as to the reason why defense counsel did not move for discovery under the RJA. However, for the reasons set forth above, defense counsel could have reasonably concluded a plausible, factual foundation that a violation of the RJA could or might have occurred, did not exist.

(See, e.g., *People v. Gutierrez* (2009) 45 Cal.4th 789, 804 [defense counsel's decision not to file a motion he believes would be futile does not impair defendant's right to effective assistance of counsel].)

Regardless, Johnson failed to establish he was prejudiced by defense counsel's failure to file a motion for discovery pursuant to the RJA. (§ 745, subd. (d).) The First District articulated the relatively relaxed standard courts should use when assessing whether the defendant presented a plausible justification for discovery under the RJA. (*Young, supra,* 79 Cal.App.5th at pp. 159–161.) In order to obtain discovery under the RJA, the defendant must show relevance to a potential section 745, subdivision (a) violation—"that is, each request for disclosure must be reasonably calculated to lead to discovery of admissible evidence probative of a section 745, subdivision (a) violation." (*Id*. at p. 160.)

In *Young*, the trial court denied the defendant's discovery motion ruling that it was based on nothing more than the defendant's race. (*Young, supra,* 79 Cal.App.5th at p. 145.) In vacating the court's order denying discovery, the reviewing court reasoned the lower court was factually incorrect; the defendant presented specific allegations of a racially motivated traffic stop. (*Id*. at p. 144, 161.) The defendant argued "he is black … studies in California have shown black drivers are more likely to be stopped by police than any other racial group, and … the circumstances of the traffic stop leading to [the defendant's] arrest suggest[ed] the traffic stop … was racially motivated." (*Id*. at p. 161.) For example, the defendant contended he was stopped for traffic infractions, but he was never cited for any. (*Id*. at p. 161.) He further claimed the stop was a pretext to search his vehicle, he was forcibly beaten when he questioned the officer's desire for him to leave his vehicle, and the officer who stopped him had "ample opportunity to observe him and take note of his skin color" which may amount to racial profiling. (*Ibid*.)

The First District summarized the defendant's theory for discovery: "Police officers exercise broad discretion in carrying out their power to arrest, and if there is

27.

racial bias at the level of who is arrested for possession of [drugs] for sale, the discretionary choices officers make will be reflected in the pool of suspects the district attorney ultimately decides to charge, and *may* therefore taint the charging process." (*Young, supra,* 79 Cal.App.5th at p. 164.) The reviewing court vacated the trial court's ruling and remanded the matter for consideration of the defendant's facts and theory relied upon against the backdrop of the RJA's relaxed plausible justification standard for obtaining discovery. (*Id*. at pp. 159–160, 169.)

The facts of our case are far less specific than the theory presented in *Young*. Here, Johnson failed to set forth any specific reasons why there was a violation of the RJA other than prior to the altercation, Callen made an alleged offensive comment There were no facts suggesting racial profiling played a part in Johnson's charge, warranting discovery. (See, e.g., *Young, supra*, 79 Cal.App.5th at p. 166; see also, *Garcia, supra,* 85 Cal.App.5th at pp. 296–297.) As the *Young* court pointed out, "if [the defendant] indeed argued nothing more than that he is a black person who was charged with felony possession of [drugs] for sale—the court would have been right to deny his discovery motion." (*Id*. at p. 161.) This is the situation we have here. Johnson's only plausible justification was his race. Johnson does not specify any facts or evidence supporting a section 745, subdivision (d) discovery motion, and the record fails to disclose any information that may be relevant to Johnson's claim. While the threshold showing requires only a "plausible factual foundation, based on specific facts, that a violation … 'could or might have occurred,' " here, Johnson's contentions identify no such facts justifying discovery. (*Young,* at p. 159.) Johnson failed to demonstrate a plausible factual scenario that a RJA violation could or might have occurred. (*Id.,* at pp. 144–145.) Thus, Johnson cannot show he was prejudiced for his counsel's failure to bring a discovery motion under the RJA. Johnson's ineffective assistance of counsel claim fails.

For these reasons, we also reject Johnson's due process challenge. Because the record does not show a plausible factual scenario that a RJA violation could or might

have occurred or any resulting prejudice, Johnson's trial was not fundamentally unfair such that it was a violation of his due process rights under the Fourteenth Amendment.

## DISPOSITION

The judgment is affirmed.

FAIN, J.*

WE CONCUR:


HILL, P. J.


PEÑA, J.

---

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.