Filed 2/19/26  P. v. Santos CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS SANTOS,<br><br>    Defendant and Appellant. | B337974<br><br>(Los Angeles County<br>Super. Ct. No. LA099490) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed.

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendant Carlos Santos appeals from a judgment of conviction entered after the trial court denied his motion to suppress evidence. Santos pleaded nolo contendere to one count of possession of a controlled substance with a firearm and one count of unlawful possession of ammunition. A police officer found the firearm, ammunition, and narcotics during a traffic stop and the ensuing search of a vehicle in which Santos was a passenger. The trial court sentenced Santos to the low term of imprisonment on each count to run concurrently.

On appeal, Santos argues the trial court erred in denying his motion to suppress the contraband because police officers unduly prolonged the traffic stop. Santos concedes the police lawfully stopped the vehicle for a traffic violation. He claims, however, that the officers should have either issued a citation to the driver or terminated the traffic stop after a records check revealed that the vehicle had not been reported as stolen. Instead, the officers ordered the driver, Santos, and another passenger out of the vehicle, and one of the officers elicited an admission from the driver that a methamphetamine pipe was in the vehicle. Having thus secured probable cause to search the vehicle and its contents for narcotics, the officer later retrieved a satchel from the floorboard of the front passenger seat where Santos had been sitting. In that satchel, the officer found the firearm, ammunition, and narcotics.

Additionally, Santos asks us to review the in camera proceedings the trial court conducted on his *Pitchess*[1] motion in which he sought disclosure of the personnel records of the officers who conducted the traffic stop.

---

[1] (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

2

We decline Santos's request to examine the in camera *Pitchess* proceedings because he fails to demonstrate such a review falls within the limited scope of our review of the judgment entered upon his pleas of nolo contendere.

We also reject Santos's claim the police unduly prolonged the traffic stop. Although one of the officers conducted a records check revealing the vehicle had not been reported as stolen and may have been a rental car, the driver's inability to produce documentation showing she was in lawful possession of the car justified the officer's decision to continue to detain the vehicle's occupants to investigate further. Further, one of the officers observed Santos and the driver make furtive movements after the traffic stop had been initiated; specifically, the driver appeared to hand a bag to the rear passenger and Santos seemed to reach for the satchel. Based on these observations, the officers could implement measures for their safety. These measures were ordering the occupants out of the car, conducting patdown searches, and searching the passenger compartment for weapons. The driver admitted that drug paraphernalia was in the car while the officers were completing these safety measures.

Based on these facts, we conclude the traffic stop was not unduly prolonged and the trial court thus did not err in denying Santos's motion to suppress. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

---

[2] We derive our Factual and Procedural Background in part from admissions in the parties' filings. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023)

3

## 1. The information

The People filed an information charging Santos with one count of possession of a controlled substance with a firearm, in violation of Health and Safety Code section 11370.1, subdivision (a) (count 1), and one count of unlawful possession of ammunition, in violation of Penal Code[3] section 30305, subdivision (a)(1) (count 2).

## 2. Procedural history of, and the traffic stop giving rise to, Santos's motion to suppress evidence

Santos filed a motion to suppress evidence pursuant to section 1538.5. On January 9, 2024, the trial court held a hearing at which Officer Oscar Villanueva testified. At the conclusion of the hearing, the court denied the motion. We summarize the traffic stop below.[4] In Discussion, part B, *post*, we describe in greater detail certain aspects of the traffic stop pertinent to this appeal.

At 1:38 a.m. on June 7, 2023, Los Angeles Police Department (LAPD) Officers Villanueva and Jordan Mitchell were on patrol near a motel in Panorama City. Officer Villanueva testified that upon observing a vehicle make an unsafe lane change, he initiated a traffic stop by activating the patrol car's lights and sirens. The vehicle traveled approximately a block and a half before it stopped. Officer Villanueva testified

---

94 Cal.App.5th 764, 772, fn. 2 (*Association for Los Angeles Deputy Sheriffs*) [employing this approach].)

[3] Undesignated statutory references are to the Penal Code.

[4] We rely in part on body camera footage from the traffic stop that was an exhibit in the trial court.

that before the vehicle came to a full stop, the officer (1) believed he saw the driver "making furtive movements," that is, he believed he saw the driver hand a bag to the rear passenger, and (2) observed that "the front passenger," i.e., Santos, "was making furtive movements toward his torso area." Officer Villanueva testified he had "a clear vision of the interior" of the vehicle by virtue of the "three high intensity lights" on the patrol car.

Officer Villanueva approached the driver's side of the vehicle and asked the driver for her license, which the driver provided to the officer. In response to Officer Villanueva's request for the car's registration and proof of insurance, the driver asserted the vehicle was a rental car that "doesn't come with nothing [*sic*]."

Officer Villanueva returned to the patrol car to use the car's computer to determine whether the driver had any outstanding warrants and attain registration information for the vehicle. The computer system indicated the vehicle was registered to "My Car Enterprises." Officer Villanueva testified the vehicle had not been reported as stolen and that the identity of the registered owner led him to believe it was a "rental car."[5]

---

[5] In his reply brief, Santos claims that Officer Villanueva's "check of the license . . . confirmed there were no outstanding warrants on the driver's license . . . ." The excerpts from Officer Villanueva's testimony that Santos cites do not support that proposition. Further, although the excerpt from the body camera footage Santos cites depicts Officer Villanueva conducting a records check using the computer in his patrol vehicle, we are unable to determine from that footage whether the records check revealed any outstanding warrants for the driver. Notwithstanding Santos's failure to support this assertion, we

Officer Villanueva then ordered the occupants to exit the vehicle. Before Santos stepped out of the vehicle, Officer Mitchell ordered Santos to leave his bag in the car. Officer Villanueva's testimony supports the inference that at some point before Santos exited the vehicle, the officer observed Santos "reaching or touching or fidgeting with [a] satchel when it was on his chest . . . ." Upon being asked why he decided to order the occupants to exit the vehicle, Officer Villanueva testified: "At that moment, based on the totality of all the circumstances — the fact that it came out of a motel, the fact of prior it was stopped [*sic*] they were making furtive movements inside the vehicle and now that we have a vehicle that's a rental car but there is no proof that she rented it, for my officer safety concerns, I elected all the occupants to step out and be detained along the sidewalk so I can have a clear visual of their hands and reduce the risk of them grabbing anything or arming themselves any with [*sic*] weapons inside the car."

After the three individuals left the vehicle, Officer Villanueva approached the driver and instructed her to move several feet away from the other occupants. Officer Villanueva asked the driver if the officers were "going to find any narcotics in the car . . . ." The driver stated that she had a "piece" or "pookie" in the vehicle, which the parties agree is a methamphetamine pipe. Officer Villanueva asked the driver if any firearms were in the vehicle, and the driver replied, "That I know of, there is nothing in the car except for my piece. It should be just a pookie." The video shows that this conversation between Officer

---

assume solely for the purposes of this appeal that Officer Villanueva found no outstanding warrants for the driver.

Villanueva and the driver ended less than 10 and a half minutes after the traffic stop began.

Officer Villanueva thereafter instructed Officer Mitchell to conduct a patdown search of the individual who had been in the rear passenger seat of the vehicle, and Officer Villanueva conducted a patdown search of Santos. Officer Villanueva then directed Officer Mitchell to patdown the driver as well.

Officer Villanueva approached the vehicle from the passenger side and searched the green satchel that was on the floorboard. Based on his training and experience, the officer testified many individuals in the area he patrols "carry guns in satchels," and "[a] common reason why people carry guns in satchels is they are able to discard the satchel when running from the police."[6] Inside the satchel, Officer Villanueva found a loaded handgun, live ammunition, narcotics, baggies, and a scale.[7] The firearm was not registered to Santos. Officer Villanueva also found a methamphetamine pipe in the driver's

---

[6] Officer Villanueva further testified, "It is actually safer for [a person armed with a gun] to discard [the weapon via a satchel] because prior to that they would remove a firearm from their person, which sometimes would result in some kind of deadly force situation."

[7] Although Santos acknowledges in his factual summary that, "[i]n searching the green satchel, [Officer Villanueva] recovered a 43 Glock 9-millimeter pistol, live ammunition, narcotics, baggies and a scale," Santos claims an excerpt from the video footage "shows that there were no narcotics, baggies or a scale in the bag." Because of the angle and lighting conditions of the video, however, we are unable to discern the precise contents of the satchel from the excerpt of the footage he cites.

7

side door panel, and a black handbag on the backseat that contained heroin.

Although the police arrested Santos, the officers let the driver and other passenger leave in the vehicle.

In denying Santos's motion to suppress, the trial court found the officers had not prolonged the traffic stop because Officer Villanueva "indicated that he ran the car and didn't have any resolution as to whether the driver was in the rightful possession of the car." The court also indicated that Officer Villanueva was permitted to order the occupants out of the car for "officer safety" because the court found credible the officer's testimony that he saw "furtive movements" in the vehicle, and there were "two officers and three individuals in the car." According to the court, once the driver "admitted that there was a meth pipe, . . . the law allowed [Officer Villanueva] to search" "the vehicle including containers in it" for narcotics.

### 3. *Procedural history of Santos's* **Pitchess** *motion*

After the trial court denied the motion to suppress, Santos filed a *Pitchess* motion for discovery of information in Officer Villanueva's and Officer Mitchell's personnel files. Specifically, Santos sought discovery of evidence that could impeach the officers' character for truthfulness or veracity, acts of past misconduct, and acts demonstrating racial or ethnic prejudice and improper tactics.

The trial court granted the *Pitchess* motion as to both officers. The court conducted an in camera hearing with the LAPD's custodian of records on April 3, 2024. The sealed transcript for the April 3, 2024 hearing reveals that although the custodian asserted there existed no responsive documents as to Officer Mitchell, the court announced its intention to order the

8

custodian to disclose to the defense some, but not all, of the records concerning Officer Villanueva that the custodian had produced at the in camera hearing.

On appeal, neither side clarifies whether the LAPD's custodian of records in fact produced any documents to Santos in accordance with the trial court's oral remarks at the in camera hearing. Instead, Santos and the Attorney General claim that at the April 3, 2024 hearing, the court decided not to disclose any documents to the defense.

### 4. *Santos's pleas of nolo contendere, the trial court's sentence, and Santos's notice of appeal*

On April 11, 2024, Santos pleaded nolo contendere to counts 1 and 2. The minute order for the April 11, 2024 hearing shows the trial court sentenced Santos to the low term of 16 months in prison on count 2, to be served concurrently with the sentence for count 1, and the low term of two years in prison for count 1, which term the court stayed pursuant to section 654. The minute order also indicates the court ordered that Santos be released from custody "for time served." (Capitalization omitted.)

On May 9, 2024, Santos filed a form notice of appeal. Santos checked a box on the notice indicating his appeal is "based on the denial of a motion to suppress evidence under . . . section 1538.5." Santos did not check any boxes on the form that would have indicated he had asked the trial court to issue a certificate of probable cause for the appeal.

### APPLICABLE LAW AND STANDARDS OF REVIEW

Generally, an "investigative detention" must be supported by "reasonable suspicion." (See *People v. Flores* (2019) 38 Cal.App.5th 617, 626–628 (*Antonino Flores*).) "[A] reasonable

9

suspicion justifying a detention is 'simply . . . "a particularized and objective basis" for suspecting the person stopped of criminal activity.' [Citation.] So long as the facts known to the officer reasonably cause him or her to suspect the person he or she intends to detain might be or has been involved in criminal activity, the detention is lawful." (*Id.* at p. 628.) " 'Although an officer's reliance on a mere " 'hunch' " is insufficient to justify a [detention] [citation], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard [citation].' [Citation.]" (*Ibid.*)

Similarly, if an officer is aware of facts giving rise to reasonable suspicion that an occupant of a vehicle is "dangerous and may gain immediate control of a weapon," then the "officer may . . . search the passenger compartment of the vehicle, limited to those areas in which a weapon may be placed or hidden . . . ." (See *People v. Dolly* (2007) 40 Cal.4th 458, 463 (*Dolly*); see also *People v. Evans* (2011) 200 Cal.App.4th 735, 752, fn. 10 (*Evans*) [indicating the "reasonable suspicion" standard governs this type of search].) "The rule applies even where a defendant is outside his car and nominally under the control of law enforcement officers." (See *People v. Bush* (2001) 88 Cal.App.4th 1048, 1052 (*Bush*).)

On the other hand, probable cause is typically required before an officer may conduct a more extensive search of a lawfully stopped vehicle. (See *Evans*, *supra*, 200 Cal.App.4th at p. 753.) If the police have "probable cause to believe [the] . . . vehicle contains evidence of criminal activity or contraband," then officers may search " 'every part of the vehicle and its contents that may conceal the object of the search.' [Citations.]"

10

(See *ibid.*)  "Probable cause to search . . . exists when the 'known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . .' [Citations.]" (*Ibid.*)

A traffic stop "only ripens into an unlawful detention if it deviates too far from the proper legal justification, which is to 'address the traffic violation that warranted the stop' — . . . the 'mission' of the stop — and 'attend to related safety concerns.' [Citation.]  Aside from directly addressing the traffic violation, the 'officer's mission' also 'includes "ordinary inquiries incident to [the traffic] stop . . ." [citation] . . . . [such as] checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.'  [Citation.]"  (See *People v. Esparza* (2023) 95 Cal.App.5th 1084, 1094 (*Esparza*).)  In determining whether a traffic stop has been unduly prolonged in violation of the Fourth Amendment, a court must bear in mind that "[i]nvestigations conducted by officers not directly related to the initial purpose of the stop 'do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.' [Citation.]" (See *ibid.*)

In reviewing an order denying a motion to suppress evidence, " 'we defer to the trial court's factual findings, express or implied, where supported by substantial evidence[,]' [citation]" meaning " 'the [trial] court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences . . . .'  [Citation.]" (See *Antonino Flores, supra*, 38 Cal.App.5th at p. 626.)  We independently review whether the facts found by the trial court

11

give rise to a Fourth Amendment violation. (See *ibid.*) We determine whether a search or seizure was reasonable "under an objective standard, based on the facts and circumstances known to the officer but without regard to the officer's subjective state of mind." (See *ibid.*)

"[R]egardless of the applicable standard of review," "[t]he appellant bears th[e] burden of rebutting the presumption of correctness accorded to the trial court's decision . . . ." (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 777; see also *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 [same].) To overcome the presumption of correctness, an appellant must supply the reviewing court with cogent argument supported by legal analysis and citation to the record. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" 'If no[ legal argument with citation of authorities] is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *People v. Flint* (2018) 22 Cal.App.5th 983, 1006, fn. 17 [noting that an appellate court may " 'decline to consider any factual assertion unsupported by record citation at the point where it is asserted[,]' " and that " '[a]n appellate court "will not develop the appellants' arguments for them" ' "].)

## DISCUSSION

Santos raises two questions on appeal: (1) Did the trial court err in denying his motion to suppress evidence under section 1538.5?; and (2) Did the court err in its examination of officer personnel files at the in camera *Pitchess* hearing? We lack jurisdiction to review the trial court's *Pitchess* rulings. (Discussion, part A, *post*.) As to the first issue, we conclude

Santos has not shown the trial court erred in denying his suppression motion.  (Discussion, part B, *post*.)

## A. Santos Fails To Show the Trial Court's Rulings on His *Pitchess* Motion Are Within the Scope of Our Appellate Review

" ' "It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute." [Citations.]' [Citation.]" (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 598.)  Section 1237 authorizes an appeal by a defendant from a final judgment of conviction except as provided in section 1237.5.  (See § 1237, subd. (a).)  As relevant here, section 1237.5 provides limited review from a judgment that is the product of a plea:  "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.  [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."  (§ 1237.5.)  The limitations in section 1237.5 are jurisdictional.  (See *People v. Hernandez* (1992) 6 Cal.App.4th 1355, 1361.)

If the defendant does not file in the trial court a written request for a certificate of probable cause or the trial court denies the defendant's request for issuance of such a certificate, then "the appeal will be limited to issues that do not require a certificate of probable cause."  (See Cal. Rules of Court, rule 8.304(b)(3).)  A defendant does not need a certificate of probable cause for an appeal based on or from:  "(A) The denial of

13

a motion to suppress evidence under . . . section 1538.5; [¶] (B) The sentence or other matters occurring after the plea . . . that do not affect the validity of the plea[;] . . . or [¶] (C) An appealable order for which, by law, no certificate of probable cause is required." (See Cal. Rules of Court, rule 8.304(b)(2).)

Santos bears the burden of showing we have jurisdiction to review the trial court's rulings on his *Pitchess* motion. (See *People v. Sorden* (2021) 65 Cal.App.5th 582, 588 [noting that an appellant bears the "burden of establishing *reversible* error," italics added]; *Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 721–722 [indicating that an appellant's "burden of demonstrating reversible error" includes the obligation to show that the reviewing court may exercise appellate jurisdiction].) As explained below, Santos has not discharged that burden.

Santos does not claim to have sought or attained a certificate of probable cause from the trial court, and there is no certificate of probable cause in the two clerks' transcripts in the appellate record. Additionally, a certificate of probable cause is not among the materials Santos successfully moved to augment the appellate record to include. Indeed, as we noted in our Factual and Procedural Background, part 4, *ante*, Santos did not check any boxes on his notice of appeal that would have indicated he had requested a certificate of probable cause from the trial court.

Santos asserts, "The *[Pitchess]* motion was related to the suppression motion [Santos] filed in the case which went to the heart of the search and the items recovered." Accompanying this assertion is nothing more than a passing citation, with no supporting analysis, to *People v. Hobbs* (1994) 7 Cal.4th 948 and

14

*People v. Collins* (2004) 115 Cal.App.4th 137 (*Collins*).  (Citing *Hobbs*, at pp. 955–956; *Collins*, at pp. 149–151.)  (See *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case."].)

Admittedly, a trial court's rulings on a *Pitchess* motion may be reviewed on appeal from a judgment entered on a plea of nolo contendere if the motion was "intertwined with" a motion to suppress evidence under section 1538.5.[8]  Santos's *Pitchess* motion does not appear to satisfy this standard.  As we noted in our Factual and Procedural Background, part 3, *ante*, Santos filed that motion *after* the trial court had already denied his suppression motion.

It is telling that Santos's counsel represented in the declaration he filed in support of the *Pitchess* motion that the personnel records Santos was requesting were "necessary *in order to properly prepare the case for trial* . . . ." (Italics added.) Defense counsel further asserted, "[T]he body worn video evidence directly contradicts the allegation that any drugs were found in the satchel, thereby undermining all statements from [Officers Villanueva and Mitchell]."  Defense counsel also represented in the motion Santos's "defense may be that the

---

[8] (See *Collins, supra,* 115 Cal.App.4th at pp. 141, 150–151; see, e.g., *id.* at pp. 141, 149–151 & fn. 9 [holding that an order denying the defendant's *Pitchess* motion, which denial order was issued over a year before the trial court denied the defendant's motion to suppress evidence obtained via a search, was reviewable on appeal from a plea of nolo contendere because the defendant had sought prison officials' personnel records for the purpose of challenging the search's legality].)

[o]fficers misrepresented facts related to the arrest of . . . Santos and that such misrepresentation undermines their credibility." The *Pitchess* motion thus seems to have been aimed solely at preparing a defense for trial.

For these reasons, we decline Santos's request to "examine the sealed transcript and materials reviewed by the trial court at the *in camera* hearing" to determine whether the court abused its discretion in ruling on his *Pitchess* motion.

## B. Santos Fails To Demonstrate the Trial Court Erred In Denying His Motion To Suppress

Santos acknowledges Officer Villanueva "had reasonable suspicion to pull the vehicle over" "[b]ased on the traffic violation" the officer had observed. Santos argues instead that Officer Villanueva prolonged that detention to obtain probable cause to search the vehicle. Specifically, he contends Officer Villanueva "prolonged the detention . . . when he beckoned the driver to step apart from, and out of earshot of, the other two occupants," and asked the driver questions "purposely and solely focused on pursuing a criminal investigation unrelated to the traffic violation." According to Santos, before Officer Villanueva had this discussion with the driver, the officer's concerns regarding "whether the driver was in rightful possession of the vehicle" had already been "resolved . . . ." From this premise, Santos advocates Officer Villanueva should simply have "issue[d the driver] a citation or let [the driver, Santos, and the other passenger] go." We disagree.

Santos elaborates, "The officer's 'concerns' . . . about the vehicle were dispelled as soon as he . . . confirmed that there were no outstanding warrants on the driver's license and, just as

16

the driver had explained to the officer, the vehicle was a rental and it was not reported as a stolen vehicle."

Although Officer Villanueva testified he believed the vehicle was a rental car, Santos overlooks the officer's testimony that the driver had failed to provide him with any proof that *she* had rented it. (See Factual & Procedural Background, part 2, *ante*.) In determining whether to continue his detention of the vehicle's occupants for further questioning, Officer Villanueva was " 'permit[ted] . . . to make "commonsense judgments and inferences about human behavior." ' [Citation.]" (See *People v. Flores* (2024) 15 Cal.5th 1032, 1041.) Specifically, the officer reasonably could have inferred that a rental car company would ordinarily provide a customer with documentation relating to the rental. The officer was thus aware of "specific articulable facts" that " 'provide some objective manifestation that the [occupants of the vehicle] may be involved in criminal activity[,]' " i.e., reasonable suspicion warranting further detention to ascertain whether the occupants lawfully possessed the vehicle. (See *Antonino Flores*, *supra*, 38 Cal.App.5th at p. 627 [defining reasonable suspicion].)

Prior to inquiring further regarding whether the driver and two passengers were in lawful possession of the vehicle (e.g., asking the driver for additional details concerning the rental transaction), the officers were permitted to employ certain safety measures. First, "[o]nce a vehicle has been detained in a valid traffic stop, police officers may order the driver *and passengers* out of the car pending completion of the stop without violating the Fourth Amendment." (*People v. Lomax* (2010) 49 Cal.4th 530, 564.) "[I]t is well settled that" an officer may undertake this

17

precaution in the absence of any "*individualized suspicion whatsoever . . . .*" (See *ibid.*)[9]

The circumstances known to Officer Villanueva also justified his decision to conduct patdown searches of the vehicle's occupants. An officer may conduct such a search if he or she "harbors reasonable suspicion that 'criminal activity may be afoot and that the persons with whom he [or she] is dealing may be armed and presently dangerous[.]' " (See *Esparza*, *supra*, 95 Cal.App.5th at p. 1091.) Officer Villanueva's testimony indicates that before the occupants exited the vehicle, he observed the driver and Santos make certain furtive movements, that is, the officer saw Santos reach for a satchel on his chest, and the officer believed he saw the driver hand a bag to the rear passenger. (See Factual & Procedural Background, part 2, *ante*.) Officer Villanueva also testified he learned from his training and experience that many individuals in his patrol area carry guns in satchels to readily dispose of weapons if pursued by police. (See Factual & Procedural Background, part 2, *ante*.) Officer Villanueva thus had reasonable suspicion the occupants of a vehicle he could not confirm the driver had rented were armed and dangerous.

Because Officer Villanueva was aware of facts giving rise to reasonable suspicion the vehicle's occupants were armed and dangerous, the officers were also permitted to search the

---

**9** Santos argues, "[E]ven if the officer was permitted to pull everyone out of the car for 'officer safety' the officer did not do so initially." Santos does not contend, however, that Officer Villanueva unduly prolonged the traffic stop by failing to order the occupants out of the vehicle when he first made contact with the driver.

18

passenger compartment of the vehicle for weapons.  (See fn. 11, *post* [noting Santos claims Officer Villanueva expressed his intention to search the vehicle prior to the driver's admission that contraband was in the car]; *Dolly, supra,* 40 Cal.4th at p. 463; *Evans, supra,* 200 Cal.App.4th at p. 752, fn. 10; *Bush, supra,* 88 Cal.App.4th at p. 1052.)

The trial court did not err in rejecting Santos's claim the detention was constitutionally infirm.  The officers could lawfully continue to detain the driver and two passengers to investigate the lawfulness of their possession of the vehicle and ensure they did not have access to weapons during that inquiry.  Officer Villanueva asked the driver whether narcotics were in the vehicle after she, Santos, and the other passenger exited the vehicle but before the two officers conducted patdown searches of the three occupants.  (See Factual & Procedural Background, part 2, *ante*.)[10]  The video shows that approximately 45 seconds elapsed between (1) the moment Officer Villanueva ordered the driver to walk away from the other two passengers so he could ask her questions and (2) the conclusion of his conversation with the driver in which she had admitted a "piece" or "pookie" was in the car.[11]  Santos does not argue, let alone establish, that the officers

---

[10]  In his reply brief, Santos intimates the officers had already searched him "by the time [Officer Villanueva] pulled the driver aside to question her . . . ."  The excerpt from the video Santos cites in support of this apparent proposition, however, does not show the officers searched him before Officer Villanueva asked the driver whether contraband was in the vehicle.

[11]  Santos complains that when Officer Villanueva asked the driver whether narcotics were in the vehicle, "the officer . . . implied that a search of the vehicle was going to be conducted shortly irrespective of anything the driver might say."  Insofar as

should have conducted patdown searches of the occupants, searched the passenger compartment for weapons, and finished their inquiry as to the occupants' lawful possession of the vehicle within 45 seconds. Santos thus fails to demonstrate that Officer Villanueva's questioning of the driver violated the Fourth Amendment by " 'measurably extend[ing] the duration of the stop.' [Citation.]" (See *Esparza*, *supra*, 95 Cal.App.5th at p. 1094.)

Santos seems to argue the Fourth Amendment did not permit the officers to extend the duration of the traffic stop to undertake officer safety measures as to the rear passenger because she had "prosthetic legs and one hand . . . ." We acknowledge the rear passenger had these physical characteristics. Still, Officer Villanueva believed he saw the driver pass a bag to the rear passenger after the officers had initiated the traffic stop but before the vehicle came to a halt. Additionally, the video shows the rear passenger was able to walk and stand for some time after being ordered out of the vehicle. Accordingly, the facts known to Officer Villanueva gave

Santos is arguing Officer Villanueva improperly procured the driver's admission of contraband by falsely representing the law permitted him to search the vehicle, we reject that contention. As we explained earlier, the information known to Officer Villanueva at that point gave rise to reasonable suspicion justifying a search of the passenger compartment for weapons.

Additionally, because Santos does not contest the trial court's finding that the driver's admission of contraband afforded the officer probable cause to search the "containers within the vehicle," we need not decide whether reasonable suspicion alone would have been sufficient to authorize Officer Villanueva to open the green satchel.

rise to reasonable suspicion that the rear passenger presented a danger to the officers, notwithstanding her physical characteristics.

Santos argues the case before us is analogous to *People v. Ayon* (2022) 80 Cal.App.5th 926 (*Ayon*). In that case, the appellate court concluded the trial court erred in denying a motion to suppress narcotics and drug paraphernalia seized during a traffic stop. (See *id.* at pp. 929, 944.) Police officers had initiated the stop after they observed the defendant-driver prematurely enter a bike lane and belatedly activate his traffic signal in the course of making a right turn. (See *id.* at p. 930.)[12] Within the first 3 minutes and 32 seconds of the stop, the officers obtained the defendant's license and registration information, and learned from a "records check" that the defendant's "license was valid[ and] there were no 'wants' for him"; there was "no evidence that anything transmitted by the dispatcher would have justified further investigation." (See *Ayon*, at pp. 931–932, 938–

_____

[12] Unlike in the case before us, the traffic infractions in *Ayon* arguably did not motivate the officers to initiate the traffic stop. Instead, the defense argued the officers stopped the vehicle to further a preexisting narcotics investigation. (See *Ayon*, *supra*, 80 Cal.App.5th at p. 942.) The appellate court acknowledged, "As a general matter, pretextual traffic stops do not violate the Fourth Amendment." (*Ibid.*) Two justices, however, concluded the preexisting drug investigation was relevant to "whether [the] warrantless search or stop [was] objectively reasonable" in that case. (See *id.* at pp. 929, 943–944.) In her concurring opinion, Justice Danner disagreed with the majority's conclusion that the preexisting narcotics investigation was relevant because an officer's subjective intent " 'plays no role in the Fourth Amendment inquiry.' " (See *id.* at pp. 944–945 (conc. opn. of Danner, J.).)

21

939.) Several minutes later, the defendant declined the officer's request for consent to search the vehicle, and the officer handcuffed and detained the defendant. (See *id.* at pp. 930–932.) More than 18 minutes after the traffic stop began, a narcotics canine alerted to the presence of narcotics in the defendant's vehicle. (See *id.* at pp. 933, 938–939.)

The appellate court observed, "Nothing in the record show[ed the officers in *Ayon*] doing anything to address the traffic infractions" after the records check was completed. (See *Ayon, supra*, 80 Cal.App.5th at pp. 938–940.) Rather, the evidence showed "[a]fter [one of the officers received] the radio response to the records check, [the officer] stood next to [another officer] for the next 12 minutes, at which point [the officer who received the radio response] got into his car and began writing on a yellow index card." (See *id.* at p. 938.) The *Ayon* court "conclude[d] the police failed to diligently pursue an investigation of the traffic infraction and instead unlawfully prolonged the stop" "until the narcotics dog arrived" and alerted to the drugs in the vehicle. (See *id.* at pp. 943–944.)

Whereas there was no evidence the records check conducted in *Ayon* revealed any legal issues with the defendant's driver's license or registration (see *Ayon, supra*, 80 Cal.App.5th at p. 938), the records check here did not establish the driver lawfully possessed the vehicle. Officer Villanueva could question the vehicle's occupants further. Additionally, the officers could constitutionally take certain safety measures during that investigation, including ordering the occupants out of the vehicle, conducting patdown searches, and searching the passenger compartment for weapons. Officer Villanueva elicited the driver's admission that contraband was in the vehicle during a

22

45-second conversation that occurred before the investigation and related officer safety measures could have been completed. Accordingly, *Ayon* is inapposite.

Lastly, we observe Santos repeatedly questions whether Officer Villanueva believed the car may have been stolen or that the vehicle's occupants were armed and dangerous. For instance, Santos asserts, "[A]part from [Officer Villanueva's] initial contact with the driver[,] . . . the officer never discussed or pursued the traffic violation or the vehicle registration again throughout the entire course of the detention." He also claims Officer Villanueva "would never have allowed" the driver to depart in the vehicle "if she was not in valid possession of it, or if it was stolen." Santos further asserts, "[I]t is clear from the video that the officer did not have safety concerns with respect to the driver because he never placed her in handcuffs before pulling her aside and questioning her."

These arguments are unavailing because, as a general rule, "the subjective intent of officers is irrelevant in Fourth Amendment analysis." (See *Esparza*, *supra*, 95 Cal.App.5th at p. 1094.) The touchstone of the constitutional inquiry is whether "the lawful bounds that justif[ied] the stop [we]re observed" by the officers. (See *ibid*.) For the reasons explained above, we conclude the officers had lawful justification to continue their detention of Santos and the other occupants of the vehicle.

In sum, Santos fails to demonstrate the officers unlawfully prolonged the traffic stop to attain probable cause to search the vehicle. Consequently, the trial court did not err in denying Santos's motion to suppress the evidence seized during that search.

# DISPOSITION

We affirm the trial court's judgment.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.